# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LINCOLN BENEFIT LIFE COMPANY | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-07-1685 |
| | * | |
| VIRGINIA LEE SUITERS, ET AL. | * | |
| | ****** | |

## MEMORANDUM

This is an interpleader action in which the Estate of Virginia Lee Suiters ("Virginia") and the Estate of Jesse Suiters ("Jesse") each claim to be the beneficiary of two annuity contracts (worth approximately $400,000) purchased by Jesse Suiters from the Lincoln Benefit Life Company. Presently pending are a motion for protective order filed by the personal representatives of the Estate of Virginia Suiters and a motion for summary judgment filed by the personal representatives of the Estate of Virginia Suiters. Both motions will be granted.

I.

The pertinent facts may be briefly stated. Jesse and Virginia were married on or about August 5, 1965. There were no children from the marriage. In 1996 Suiters began residing with another man in California. In July 1996 Virginia and Jesse entered into a Separation Agreement. Under the Agreement Virginia received a substantial portion of the marital assets. In Section 10 of the Agreement Virginia and Jesse waived rights each of them may have acquired under federal or state law "as a spouse" to participate "as a payee or beneficiary" under any pension, profit-sharing, retirement, or deferred-income plan. Under Section 12 of the Agreement Virginia and Jesse waived claims they had against each other, including rights of "dower, community or marital property statutory thirds, halves or legal shares and widow's or widower's rights, or to

1

participate in any way in the enjoyment or distribution of any of the real or personal estate of which the other may be possessed at the time of his or her death."

In 2002, approximately six years after the execution of the Separation Agreement, Jesse designated Virginia as the sole beneficiary of the annuity contracts at issue.

In early 2003 Jesse was hospitalized, and it was determined that he needed assistance handling his affairs.  Suiters returned to Maryland from California and obtained a power of attorney on behalf of Jesse dated April 17, 2003.  On or about June 18, 2003, Jesse was admitted to a facility specializing in treating elderly individuals with physical and mental disease.  In the same year Suiters contacted the law firm that had represented her in connection with the drafting of the Separation Agreement and requested the firm to draft Jesse's will.  Jesse signed the will on June 18, 2003, the same day he was admitted to the treatment facility.  The will named Virginia as the primary beneficiary.

On or about September 5, 2005, Virginia, represented by the same firm, filed for a divorce from Jesse.[1]  The divorce became effective on May 25, 2006.  The Separation Agreement was "incorporated but not merged" into the divorce decree.  Prior to the divorce Jesse suffered from various ailments, including Alzheimer's and dementia.  In May 2006 his cognitive skills were "severely impaired."  According to the personal representative of Jesse's estate, throughout the time that Virginia spent in Maryland after her return, Virginia exercised undue influence over Jesse.

---

[1] Virginia's personal representative suggests that the purpose of the divorce was to enable Jesse to obtain certain public benefits.  While I note that fact, I am not relying upon it in making my ruling.

II.

In *PaineWebber Inc. v. East*, 363 Md. 408, 768 A.2d 1029 (2001), the Maryland Court of Appeals held that waiver language similar to that contained in the Separation Agreement between Virginia and Jesse did not cover a former spouse's interest as the named beneficiary of an IRA maintained by her former spouse. Thus, while after a separation the former spouse maintaining the IRA is free to change the beneficiary who is named, if no such change is made a former spouse, who remains the named beneficiary, is entitled to the proceeds of the IRA. This is so because, as interpreted by the Court of Appeals, the waiver language is intended to apply to any claim based upon the *status* conferred upon someone due to the marital relationship, as distinct from a *personal right* held by that person as the assignee of a benefit.

Unlike the assignment of the benefits involved in *PaineWebber*, Jesse's assignment of the annuity benefits at issue in this case was made after the Separation Agreement between Jesse and Virginia was signed. Thus, unless the undue influence argument made by Jesse's personal representative is sound, it follows *a fortiori* from *PaineWebber* that Virginia is entitled to receive the annuity benefits.

The argument made by Jesse's personal representative about the alleged undue influence exercised by Virginia over Jesse is not sound. At the outset it should be noted that Jesse's personal representative does not contend that Jesse's naming Virginia as the sole beneficiary of the annuity contracts at issue was itself an act of undue influence. That designation was made in 2002, while Virginia was still in California. Rather, the argument made by Jesse's personal representative is that because after her return to Maryland Virginia was appointed attorney-in-fact by Jesse in April 2008, a "confidential relationship" between Jesse and Virginia came into existence that required her to name someone other than herself as the beneficiary of the

3

annuities. The power of attorney did not, in fact, authorize Virginia to change the designation of the beneficiary of the annuities. Moreover, to the extent that Jesse's personal representative contends that Virginia should have appointed an independent third party to review the designation that Jesse had previously made, Jessie's personal representative cites no authority to support the proposition.[2] Moreover, it is not at all clear from the record that Jesse's designation of Virginia as the beneficiary on the annuities was untoward. Admittedly, it may seem unusual that a man who has entered into a Separation Agreement with his wife (who was residing with another man) would name the wife as a beneficiary on annuity contracts. On the other hand, before their separation, Jesse and Virginia had been living together for many years, and whatever the circumstances were that led to their separation, as he was approaching the end of his life Jesse may have concluded that, in return for being named as the beneficiary on the annuities, Virginia's taking care of him would be in his own best interest.

III.

The discovery sought by Jesse's personal representative that is the subject of the motion for protective order is immaterial because, as I have previously ruled in this memorandum, the argument made by Jesse's personal representative about undue influence is unsound. Moreover, Jesse's personal representative never raised the issue of undue influence in his pleadings, and his issuance of requests for discovery made approximately only one month before the close of discovery are untimely.

A separate order effecting the rulings made in this memorandum is being entered herewith.

---

[2] Likewise, Jesse's personal representative cites no authority to support his argument that California law should apply to Jesse's designation of Virginia as the beneficiary of the annuities simply because Virginia lived in California at the time designation was made.

Date:   February 26, 2013            \_\_\_\_\_/s/_____
                                     J. Frederick Motz
                                     United States District Judge